Filed 4/27/22

**CERTIFIED FOR PUBLICATION**

**IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA**

**FOURTH APPELLATE DISTRICT**

**DIVISION TWO**

| | |
|---|---|
| COUNTY OF SAN BERNARDINO et al., | |
| Petitioners, | E077884 |
| v. | (Super. Ct. No. CIVDS2021303) |
| THE SUPERIOR COURT OF SAN BERNARDINO COUNTY, | OPINION |
| Respondent; | |
| THE RED BRENNAN GROUP et al., | |
| Real Parties in Interest. | |

ORIGINAL PROCEEDINGS; petition for writ of mandate and/or prohibition. Petition is granted.

Tom Bunton and Steven O'Neill, County Counsel and Laura L. Crane, Deputy County Counsel, for Petitioners.

No appearance for Respondent.

The Red Brennan Group and Aaron D. Burden, for Real Parties in Interest.

I.

INTRODUCTION

This action arises from the San Bernardino County registrar of voters (ROV) initially miscalculating the number of signatures needed in support of plaintiffs and real parties in interest's (RPI)[1] initiative petition to repeal a special tax associated with a fire protection zone. The ROV told RPI the incorrect number, resulting in RPI incurring unnecessary costs in obtaining far more signatures than were required.

Defendants and Petitioners County of San Bernadino and its ROV, Bob Page, (collectively, the County) petition for a writ of mandate directing respondent court to vacate its order overruling the County's demurrer and to enter an order sustaining the demurrer without leave to amend. The County contends that, when RPI requested the County to inform it of the number of signatures required for its initiative petition, the County did not owe RPI any statutory or constitutional duty to provide the information when requested. The County further argues it is immune from liability for communicating to RPI the incorrect number under Government Code sections 818.8 and 822.2.

We agree that under Government Code sections 815 and 815.6, the County is not subject to liability because there was no breach of any statutory or constitutional duty. In addition, even if the County owed RPI such a duty, the County was immune from liability under Government Code sections 818.8 and 822.2. We therefore conclude the

_____

[1] Red Brennan Group, David Jarvi, Charles Pruitt, and Richard Sayers.

2

trial court erred in overruling the County's demurrer. The County's peremptory writ of mandate thus shall issue as requested, directing respondent court to vacate its order overruling the County's demurrer and enter a new order sustaining the demurrer without leave to amend.

## II.

## FACTUAL AND PROCEDURAL BACKGROUND

A. *The Complaint*

RPI's second amended complaint for damages (SAC) includes two causes of action, both brought under the California Government Claims Act (Gov. Code, § 810, et seq.) against the County of San Bernardino and its ROV. RPI's first cause of action is entitled, "Liability for Injury (Gov. Code, § 815)" and the second cause of action is entitled, "Liability for Failure to Discharge Statutory Duty (Gov. Code, § 815.6)." Attached to the SAC are 20 exhibits incorporated in the SAC substantiating RIP's factual allegations.

RPI alleges in its first cause of action that the County owed RPI a mandatory statutory duty under Elections Code section 9107, to ascertain and inform RPI of the correct number of signatures required for RPI's initiative to qualify on the ballot. The County allegedly told RPI in August 2019, that the number of required initiative petition signatures was 26,183. In February 2020, after RPI submitted its initiative with supporting signatures, the County ROV conceded the correct number of required signatures was only 8,110. RPI alleged that the County breached its duty under Elections

3

Code section 9107 to ascertain the number of signatures required for RPI's initiative petition, resulting in RPI needlessly spending more than $250,000 to collect the unnecessary signatures.

RPI alleges in its second cause of action that the County owed RPI a mandatory duty to ensure the signature requirement for RPI's initiative petition was consistent with the state signature requirement (Elec. Code, § 9035), as mandated in Article XIII C, section 3 of the California Constitution. The County allegedly imposed an initial signature requirement of more than three times the State-required number of signatures of 8,110, and did not inform RPI of the correct number until after RPI had submitted its initiative petition with 32,017 signatures. RPI alleges that without being informed of the correct signature requirement, RPI could not exercise its constitutional right to file an initiative petition. The County allegedly breached its duties under Elections Code section 9107 and Article XIII C, section 3 of the State Constitution by failing to ascertain the correct number of signatures required to qualify RPI's initiative for the ballot. This resulted in RPI incurring $250,000 in damages from gathering unnecessary signatures.

B. *The County's Demurrer*

The County filed a general demurrer to RPI's SAC pursuant to Code of Civil Procedure section 430.10, subdivision (e), on the grounds (1) RPI failed to allege liability based on either a violation of Elections Code section 9107 or Article XIII C, section 3 of the State Constitution and (2) the SAC is barred by misrepresentation immunity under

4

Government Code sections 818.8 and 822.2. RPI filed opposition to the County's demurrer.

C. *The Trial Court's Order*

On June 30, 2021, the trial court heard the County's demurrer and overruled it. The trial court incorporated in its order the written tentative ruling, in which the trial court concluded that Elections Code section 9107 and Article XIII C, section 3 of the State Constitution did not require the ROV to ascertain the correct number of signatures in advance of RPI filing its initiative petition. The court also concluded neither Elections Code section 9107 nor Article XIII C, section 3 of the State Constitution stated when or to whom the required number of signatures must be communicated, and the constitution merely prohibited the Legislature and local government charters from imposing a signature requirement higher than the requirement applicable to statewide statutory initiatives. The trial court noted RPI did not assert its initiative was improperly rejected.

The trial court, however, concluded it could not determine whether Elections Code section 9107 and Article XIII C, section 3 of the State Constitution required the County to provide initiative proponents, such as RPI, with an accurate signature number early in the initiative process. In conclusion, the trial court stated in its written tentative ruling adopted as the court's final ruling that it was overruling the demurrer because "Presently, the court cannot make this determination on the limited record before it, specifically, the lack of discussion or analysis of Elections Code section 9107 and California Constitution, Article XIII C, section 3. Moreover, the parties' analyses do not address these questions,

5

and the issue of proper interpretation in any depth. And such a determination is required to determine whether a duty is owed, or not, and whether it is a mandatory duty, or not. Moreover, the determination of a duty, whether general or mandatory, and to whom it is owed, is central to an analysis of the sufficiency of the Second Amended Complaint."

III.

*DISCUSSION*

A. *Availability of Writ Relief*

"An order overruling a demurrer is not directly appealable, but may be reviewed on appeal from the final judgment. [Citation.] Appeal is presumed to be an adequate remedy and writ review is rarely granted unless a significant issue of law is raised, or resolution of the issue would result in a final disposition as to the petitioner. [Citation.]" (*Casterson v. Superior Court* (2002) 101 Cal.App.4th 177, 182.)

In the instant case, writ review is warranted for both reasons. The petition raises the first-impression issue of whether the County has a statutory duty under either Elections Code section 9107 or Article XIII C, section 3 of the State Constitution to calculate the number of initiative signatures required and inform an initiative proponent of that number whenever requested by the initiative proponent before submitting the initiative petition with signatures. There is also an issue of first impression as to whether, if there is such a duty, the County and its employees are immune from liability under Government Code sections 818.8 and 822.2. Resolution of these issues in the County's favor will result in a final disposition as to the County and its employees.

6

B. *Standard of Review*

"The standard of review for an order overruling a demurrer is de novo.  The reviewing court accepts as true all facts properly pleaded in the complaint in order to determine whether the demurrer should be overruled.  [Citation.]  A general demurrer will lie where the complaint 'has included allegations that *clearly* disclose some defense or bar to recovery.'  [Citation.]  Thus, a demurrer based on an affirmative defense will be sustained only where the face of the complaint discloses that the action is necessarily barred by the defense.  [Citation.]"  (*Casterson v. Superior Court*, *supra*, 101 Cal.App.4th at pp. 182-183.)  "Where written documents are the foundation of an action and are attached to the complaint and incorporated therein by reference, they become a part of the complaint and may be considered on demurrer."  (*City of Pomona v. Superior Court* (2001) 89 Cal.App.4th 793, 800; *Qualcomm, Inc. v. Certain Underwriters at Lloyd's, London* (2008) 161 Cal.App.4th 184, 191.)

In the present case, we must determine whether the affirmative defense of misrepresentation immunity necessarily bars RPI's claims against the County.  We must also determine whether, as a matter of law, the County owed RPI any alleged statutory or constitutional duty that was breached.

C. *Public Entity Liability*

Under the California Government Claims Act, all government tort liability must be based on statute.  (Gov. Code, § 810, et seq.)  "Government Code section 815, enacted in 1963, abolished all common law or judicially declared forms of liability for public

7

entities, except for such liability as may be required by the federal or state Constitution. Thus, in the absence of some constitutional requirement, public entities may be liable *only* if a statute declares them to be liable. Moreover, under subdivision (b) of section 815, the immunity provisions of the California Tort Claims Act will generally prevail over any liabilities established by statute. [Citations.] In short, sovereign immunity is the rule in California; governmental liability is limited to exceptions specifically set forth by statute." (*Cochran v. Herzog Engraving Co.* (1984) 155 Cal.App.3d 405, 409.)

Government Code section 815.6 of the California Tort Claims Act adds that a public entity may be liable for an injury if there is an enactment that imposes upon the public entity a mandatory duty designed to protect against the risk of such an injury, and the injury is proximately caused by the public entity's failure to discharge the duty with reasonable diligence. The County relies on immunity statutes, Government Code sections 818.8 and 822.2, which are aimed at protecting public entities and their employees from liability for making misrepresentations.

D. *Absence of Any Breach of a Statutory or Constitutional Duty*

    1. First Cause of Action

RPI alleges in the first cause of action under Government Code section 815, that the County breached its statutory duty under Elections Code section 9107 by failing to ascertain the correct number of signatures required for RPI's initiative. On August 23, 2019, the ROV told RPI 26,183 signatures were required. Then, on February 11, 2020, after RPI submitted its initiative petition with signatures, the ROV told RPI that only

8

8,110 signatures were required.

Elections Code section 9107 states that "[t]he county elections official shall *ascertain the number of signatures required to sign the petition* by obtaining the number of votes cast within the county for all candidates for Governor at the last gubernatorial election preceding the publication of the notice of intention to circulate the initiative petition." (Italics added.) Elections Code section 9113 further states that, "[w]hen the petition is filed, the county elections official shall determine the *total number of signatures affixed to the petition*." (Italics added.)

The first cause of action fails to allege a cause of action because there was no violation of Elections Code section 9107. First, although in August 2019, the ROV initially miscalculated the number of required signatures, the County ultimately complied with Elections Code section 9107 in February 2020, by the County ROV correctly calculating the number of signatures required. Second, Elections Code section 9107 does not state when the ROV is required to calculate the number of signatures required for an initiative petition. Here, the ROV initially provided an incorrect signature number in August 2019, but then later, in February 2020, provided a correct number. Third, Elections Code section 9107 does not mandate that the County or ROV inform the initiative proponent, even upon request, of the number of signatures required. Fourth, Elections Code section 9107 does not provide for any statutory liability against a public entity or its employees for telling an initiative proponent an incorrect number of signatures is required. We therefore conclude the County did not owe RPI a statutory

9

duty under Elections Code section 9107 to inform RPI of the correct number of required signatures when requested in August 2019.

Even were we to assume RPI adequately alleged the County committed *common law* negligence or negligent misrepresentation[2] by virtue of the ROV miscalculating the number of required signatures and communicating that incorrect number to RBI in August 2019, such claim is not based on any statute or constitutional provision providing for liability against a public entity or its employees. Therefore the trial court's ruling overruling the demurrer to RBI's first cause of action cannot stand as a matter of law. As stated in the Government Code section 815, "Editors' Notes, LEGISLATIVE COMMITTEE COMMENTS—SENATE," "This section abolishes all common law or judicially declared forms of liability for public entities, except for such liability as may be required by the state or federal constitution, e.g., inverse condemnation. In the absence of a constitutional requirement, public entities may be held liable only if a statute (not including a charter provision, ordinance or regulation) is found declaring them to be

---

[2] Common law negligent misrepresentation: "'One who . . . supplies information for the guidance of others . . . is subject to liability for harm caused to them by their reliance upon the information if [¶] '(a) he fails to exercise that care and competence in obtaining and communicating the information which its recipient is justified in expecting, and [¶] '(b) the harm is suffered [¶] '(i) by the person or one of the class of persons for whose guidance the information was supplied, and [¶] '(ii) because of his justifiable reliance upon it in a transaction in which it was intended to influence his conduct or in a transaction substantially identical therewith.'" (*U.S. v. Neustadt* (1961) 366 U.S. 696, 708, fn. 16 (*Neustadt*), quoting *The American Law Institute's Restatement of Torts* (1938), c. 22, Deceit: Business Transactions, Topic 3, Negligent Misrepresentations.)

liable. . . . [T]he practical effect of this section is to eliminate any common law governmental liability for damages arising out of torts."

Despite the Elections Code providing detailed instructions and requirements to be followed during the initiative process, there is no mention of any requirement that a public entity or its employees provide an initiative proponent with the number of signatures required for placing an initiative on the ballot. There is also no mention that a public entity must provide such information to an initiative proponent upon request before the initiative petition is submitted. This court declines to judicially legislate such a requirement that does not exist in the Elections Code. There being no alleged statutory duty owed to RPI or breach, we conclude the first cause of action does not allege a valid theory of recovery. The trial court thus erred in overruling the County's demurrer to the first cause of action.

2. Second Cause of Action

RPI's second cause of action also fails to allege a viable theory of recovery against the County. The second cause of action is entitled "Liability for Failure to Discharge Statutory Duty" under Government Code section 815.6, and alleges the following. The County has a mandatory duty under Article XIII C, section 3 of the State Constitution to ensure the signature requirement for local government initiatives affecting local taxes is consistent with the state signature requirement provided in Elections Code section 9035.[3]

---

[3] That statute requires that the proposed initiative measure is "signed by registered voters equal in number to 5 percent in the case of a statute . . . of the voters for all candidates for Governor at the last gubernatorial election preceding the issuance of the

*[footnote continued on next page]*

11

In violation of Article XIII C, section 3 of the State Constitution, Page imposed an initial signature requirement of more than three times the number of signatures required under the Elections Code and State Constitution. Page did not state the correct signature requirement until after RPI filed its initiative petition with signatures. RPI is the intended beneficiary of Elections Code section 9107 and Article XIII C, section 3, because an initiative proponent's knowledge of the correct number of signatures required is essential to exercising the power of initiative, as the failure to gather the requisite number of signatures will prevent the proposed initiative from being placed on the ballot. The County and its ROV breached duties under Elections Code section 9107 and Article XIII C, section 3, by failing to ascertain the correct number of signatures required to qualify RPI's initiative for the ballot. As a result, RPI incurred damages of more than $250,000 from gathering unnecessary signatures.

These allegations are insufficient to support liability against the County under Government Code section 815.6. The "Editors' Notes, LAW REVISION COMMISSION COMMENTS," for Government Code section 815.6 state: "This section declares the familiar rule, applicable to both public entities and private persons, that failure to comply with applicable statutory or regulatory standards is negligence unless reasonable diligence has been exercised in an effort to comply with those standards. [Citations.] In the sections that follow in this division, there are stated some immunities from this general rule of liability." Such sections providing immunities from this general

circulating title and summary for the initiative measure by the Attorney General." (Elec. Code, § 9035.)

12

rule of liability for mandatory duties include misrepresentation immunity under Government Code sections 818.8 and 822.2.

To establish liability under Government Code section 815.6, it must be shown that: "'(1) an "enactment" imposes a mandatory duty upon the defendant entity; (2) performance of the duty was intended to protect against the kind of injury suffered by the plaintiff; and (3) the defendant public entity's failure to use reasonable diligence to discharge the mandatory duty proximately caused plaintiff's injury. [Citations.]' [Citations.]" (*Harshbarger v. City of Colton* (1988) 197 Cal.App.3d 1335, 1346.)

As discussed with regard to RPI's first cause of action, Elections Code section 9107 does not provide any mandatory duty to inform an initiative proponent of the required number of signatures before submission of the initiative petition. Article XIII C, section 3 of the State Constitution also does not provide any such mandatory duty. Article XIII C, section 3 mandates that, "[t]he power of initiative to affect local taxes, assessments, fees and charges shall be applicable to all local governments and *neither the Legislature nor any local government charter shall impose a signature requirement higher than that applicable to statewide statutory initiatives*." (Italics added.) The SAC fails to allege facts establishing that the County violated this constitutional provision.

Furthermore, even if there were such a statutory or constitutional duty, there does not appear to be any basis for concluding imposing such a duty was intended to protect against the kind of injury suffered by the plaintiff, of incurring an unnecessary cost of obtaining signatures in excess of the required number. Also, there was no breach of any

13

such duty to inform RPI of the required number of signatures because, after the initiative petition was submitted with signatures, the County calculated the number of required signatures, RPI was in informed of the correct number, and the County determined that RPI's initiative qualified for the ballot. The trial court therefore erred in overruling the County's demurrer to the second cause of action.

E. *Misrepresentation Immunity under Government Code Sections 818.8 and 822.2*

Even if the County owed RPI a duty under Elections Code section 9107 or the State Constitution to inform RPI of the correct number of required signatures, and breached such duty, the County is immune from liability under Government Code sections 818.8 and 822.2, commonly known as misrepresentation immunity. We conclude the SAC and numerous documents attached to the SAC establish, as a matter of law, that the County is immune from liability under Government Code sections 818.8 and 822.2.

Government Code sections 818.8 and 822.2 provide public entities and public employees with immunity from liability for misrepresentations unless the employees are guilty of actual fraud, corruption, or malice. (*Tur v. City of Los Angeles* (1996) 51 Cal.App.4th 897, 901.) Government Code section 818.8 provides that "[a] public entity is not liable for an injury caused by misrepresentation by an employee of the public entity, whether or not such misrepresentation be negligent or intentional." Section 822.2 provides: "A public employee acting in the scope of his employment is not liable for an

14

injury caused by his misrepresentation, whether or not such misrepresentation be negligent or intentional, unless he is guilty of actual fraud, corruption or actual malice."

"The purpose of [Government Code] sections 818.8 and 822.2 is to immunize public entities and their employees 'from liability for misrepresentation or deceit, a "tort distinct from the general milieu of negligent and intentional wrongs, [and which] applies to interferences with financial or commercial interest." . . . ' [Citation.]" (*Tur v. City of Los Angeles*, *supra*, 51 Cal.App.4th at p. 902, quoting *Bastian v. County of San Luis Obispo* (1988) 199 Cal.App.3d 520, 533 [Government Code sections 818.8 and 822.2 do not provide immunity for negligence.].)  The Legislature's goal in enacting Government Code section 818.8 was to exempt public entities in those cases in which private defendants typically face liability for misrepresentation.  "In short, 'misrepresentation,' as a tort distinct from the general milieu of negligent and intentional wrongs, applies to interferences with financial or commercial interest.  The Legislature designed Government Code section 818.8 to exempt the governmental entity from this type of liability."  (*Johnson v. State of California* (1968) 69 Cal.2d 782, 800.)

The County cites *Jopson v. Feather River Air Quality* (2003) 108 Cal.App.4th 492 (*Jopson*) for the proposition that the County is immune from liability under misrepresentation immunity provided in Government Code sections 818.8 and 822.2.  In *Jopson*, *supra*, 108 Cal.App.4th 492, the plaintiff sued an air quality management district (District) for negligence based on the District erring in banking and issuing the plaintiff more marketable pollution credits (ERC's) than the District actually had earned.  The

*Jopson* court affirmed the trial court's order granting the District's motion for summary adjudication of the plaintiff's negligence cause of action, based on Government Code section 818.8 immunity.  (*Id.* at p. 494.)

The *Jopson* court explained that Government Code section 818.8 "grants the government the following immunity:  'A public entity is not liable for an injury caused by misrepresentation by an employee of the public entity, whether or not such misrepresentation be negligent or intentional.'"  (*Jopson*, *supra*, 108 Cal.App.4th at pp. 493-494.)  The court in *Jopson* "concluded that the misrepresentation immunity provided by [Government Code] section 818.8 protected the District from any liability to Jopson arising from the miscalculation."  (*Id.* at p. 494.)

In *Jopson*, the court noted that "[Government code section] 818.8 grants public entities immunity for negligent misrepresentation but not for negligence.  Distinguishing between the two torts has spawned an eclectic assortment of state and federal cases." (*Jopson*, *supra*, 108 Cal.App.4th at p. 495.)  In *Jopson*, the court considered whether the plaintiff's claim was for misrepresentation or for negligence.  (*Ibid*.)  The plaintiff argued that the District's miscalculation of ERC's involved an "'operational task'" giving rise to a negligence cause of action, not a misrepresentation claim.  (*Ibid*.)

In addressing the issue, the *Jopson* court explained that "[t]he term 'misrepresentation,' as used in [Government Code] section 818.8, 'potentially lends itself to extremely expansive and elusive interpretations.'  [Citation.]  The cases cited by both sides simply reflect the elasticity of the term and the somewhat less-than-clear line of

16

demarcation between a claim of negligence, for which there is no immunity, and a claim of negligent misrepresentation, for which there is." (*Jopson*, *supra*, 108 Cal.App.4th at pp. 495-496.)

The court in *Jopson* began its analysis of Government Code section 818.8 immunity by discussing *Neustadt*, *supra*, 366 U.S. 696. The Supreme Court in *Neustadt* addressed the issue of whether the United States may be held liable under the Federal Tort Claims Act[4] "to a purchaser of residential property who has been furnished a statement reporting the results of an inaccurate FHA inspection and appraisal, and who, in reliance thereon, has been induced by the seller to pay a purchase price in excess of the property's fair market value." (*Neustadt*, *supra,* at pp. 697-698.) The *Neustadt* Court held the United States was immune from liability under 28 U.S.C. section 2680(h), which precludes recovery under the federal Tort Claims Act upon any claim arising out of misrepresentation. (*Neustadt*, *supra*, at pp. 698, 710.)

In *Neustadt*, the United States Supreme Court rejected the notion that the federal immunity statute, 28 U.S.C. § 2680(h), which is similar to Government Code section 818.8, "does not apply 'when the gist of the claim lies in *negligence* underlying the inaccurate representation . . . .' (*Neustadt*, *supra*, 366 U.S. at p. 703.) "To say . . . that a claim arises out of 'negligence,' rather than 'misrepresentation,' when the loss suffered by the injured party is caused by the breach of a 'specific duty' owed by the Government to him, i.e., the duty to use due care in obtaining and communicating information upon

---

[4] 28 U.S.C. s 1346(b), 28 U.S.C.A. section 1346(b)

17

which that party may reasonably be expected to rely in the conduct of his economic affairs, is only to state the traditional and commonly understood legal definition of the tort of 'negligent misrepresentation,' . . . ." (*Id.* at p. 706; see also *Jopson*, *supra*, 108 Cal.App.4th at p. 496.)

Citing *Neustadt* and a long line of California cases following *Neustadt*,[5] the *Jopson* court rejected the plaintiff's attempt to evade the District's Government Code section 818.8 immunity defense by characterizing the District's misconduct as something other than intentional or negligent misrepresentation. The *Jopson* court noted that essential to each claim in each case was the plaintiff's reliance upon misinformation communicated to him by the government. (*Jopson*, *supra*, 108 Cal.App.4th at p. 498.)

In *Jopson*, the plaintiff argued the California cases following *Neustadt* were distinguishable and did not support misrepresentation immunity because they merely addressed "simple misrepresentations of existing facts," whereas *Jopson* involved negligent performance of technical operational tasks of identifying, calculating, and banking ERC's. (*Jopson*, *supra*, 108 Cal.App.4th at p. 499.) The *Jopson* court disagreed the cited cases only concerned simple misrepresentations. In each of the cited California cases, "the public entity took preliminary steps to ascertain information but, in doing so, either wrongfully or negligently obtained false information. They either misapplied their

---

[5] *Brown v. City of Los Angeles* (1968) 267 Cal.App.2d 849, 850-851; *Hirsch v. Department of Motor Vehicles* (1974) 42 Cal.App.3d 252, 254-255; *Grenell v. City of Hermosa Beach* (1980) 103 Cal.App.3d 864, 867-868; *Harshbarger v. City of Colton*, *supra*, 197 Cal.App.3d at p. 1342; *Tokeshi v. State of California* (1990) 217 Cal.App.3d 999, 1002.

18

own ordinances and rules to the relevant factual scenarios or failed to process applications properly." (*Ibid*.)

The *Jopson* court concluded the same was true in *Jopson*, in which the District provided false information as a result of incorrectly calculating the ERC's: "Like an inflated appraisal, an erroneous building inspection, a mistaken certificate of ownership, a false zoning report, or ill-advised instructions, the miscalculation of the ERC's constituted misinformation communicated by a governmental entity. The miscalculation may have preceded the communication, but based on analogous facts in the cases cited above, we conclude the District is shielded from liability for having misrepresented the true (and indeed existing) fact that Jopson had earned but a small percentage of the ERC's it was issued." (*Jopson*, *supra*, 108 Cal.App.4th at p. 499.)

This case is analogous to *Jopson* in that, here, the County did not merely provide RPI with a simple misstatement of information, but also based the misstatement on its underlying miscalculation responsible for the misinformation. In response to RPI's request that the County tell RPI how many signatures were needed for RPI's initiative petition, the County initially miscalculated the number of signatures needed and then provided RPI with the incorrect number in August 2019. Under *Jopson* and its numerous cited supporting cases, we conclude the County is shielded from liability for having miscalculated the number of signatures and then communicating that incorrect number to RPI. (*Jopson*, *supra*, 108 Cal.App.4th at p. 499.)

19

We therefore conclude that, under the facts alleged in the SAC and attached documents, the County is statutorily immune under Government Code sections 818.8 and 822.2, from liability alleged in the first and second causes of action. The trial court thus erred in overruling the County's demurrer to the second cause of action.

IV.

DISPOSITION

Let a peremptory writ of mandate issue directing respondent court to vacate its order overruling the County's demurrer, and enter a new order sustaining the demurrer without leave to amend. The temporary stay order is vacated. The County is awarded its costs in this writ petition proceeding.

CERTIFIED FOR PUBLICATION

CODRINGTON
J.

We concur:

RAMIREZ
P. J.

McKINSTER
J.